IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:04-cr-102 |
| | ) | |
| JUAN JOSE ARBUSTOS-NAVARETTE | ) | |

**MEMORANDUM AND ORDER**

This matter is presently before the court on defendant's motion to withdraw his guilty plea [*see* Doc. 55]. The issues raised have been fully briefed by the parties [*see* Docs. 56 and 62], and the court has determined that neither a hearing nor oral argument is necessary.[1] Thus, this matter is now ripe for adjudication. For the reasons that follow, defendant's motion will be denied.

I.

On July 8, 2004, the defendant was arrested and detained pursuant to a complaint [Doc. 1] and a sealed complaint [Doc. 2]. On July 20, 2004, the

---

[1] The record also reflects that there has been no request for oral argument nor for a hearing by either party.

defendant was named in three counts of a five-count indictment primarily charging the defendant and two other individuals with drug trafficking offenses in counts one and two and with being illegal aliens in counts three through five [*see* Doc. 11]. The defendant entered a negotiated plea of guilty on January 26, 2005, to the drug trafficking conspiracy (count one) and to being an illegal alien (count three) [*see* Docs. 34 and 35]. The government agreed to dismiss count two at sentencing, which was set for April 27, 2005 [*see id.*].

The record reflects that the following written factual basis was agreed to by defendant on the day of his guilty plea:

> Defendant Arbustos-Navarette will be personally responsible for at least three (3) kilograms, but less than five (5) kilograms of cocaine.
>
> From approximately January, 2004, defendant Arbustos-Navarette and co-conspirators Lopez and Sanchez and others were involved in transporting cocaine from South Carolina to the Eastern District of Tennessee. In January, 2004, defendant Arbustos-Navarette and co-conspirators Lopez and Sanchez delivered one kilogram of cocaine to an individual known as "Hector" in Knoxville, Tennessee. On this trip, co-conspirator Sanchez did not accompany defendant Arbustos-Navarette and co-conspirator Lopez, but his vehicle was used in making the trip. An individual known as Fernando Perez made this trip. Fernando Perez was arrested in Newberry, South Carolina, on drug-related charges a few days before defendant Arbustos-Navarette's trip to the Eastern District of Tennessee on February 6, 2004.

2

> On February 6, 2004, defendant Arbustos-Navarette and co-conspirator Lopez traveled from Newberry, South Carolina, to the Eastern District of Tennessee in order to deliver cocaine to "Hector." On the way to Knoxville, Tennessee, defendant Arbustos-Navarette picked up co-conspirator Sanchez. Defendant Arbustos-Navarette and co-conspirators Lopez and Sanchez were transporting approximately three kilograms of cocaine. During the trip to Knoxville, Tennessee, defendant Arbustos-Navarette had numerous telephone calls establishing the meeting place with "Hector" for the exchange of this cocaine.
>
> Once they arrived at "Hector's" apartment in Knoxville, Tennessee, all three entered the residence. After a short conversation, defendant Arbustos-Navarette remained in the apartment while co-conspirators Lopez and Sanchez returned to their vehicle. Lopez and Sanchez drove to another part of the apartment complex and picked up the three kilograms of cocaine they had previously hidden and returned to the apartment with it. It was at that time that police entered the apartment and all were arrested.
>
> Defendant Arbustos-Navarette was present in the United States illegally, is a citizen of the Republic of Mexico, and has been previously deported and was therefore present in the United States at the time of his arrest without having obtained the express consent of the Attorney General of the United States or the Secretary of Homeland Security for re-application for admission into the United States.

[*See* Doc. 36, pp.1-3].[2] Before discussing the actual colloquy that occurred between the court and the defendant, it must be noted that the court retained the services of

---

[2]The record reflects further that defendant's signature is present on this factual basis [*see id.*, p.3].
3

Marcia Robinovich, a Spanish-speaking interpreter, to assist the court and counsel during that exchange. However, after being placed under oath, Ms. Rabinovich stated as follows:

> **The Interpreter**: However, I have been instructed to standby. So I will not be interpreting unless the court requests it.
>
> **The Court:** All right.
>
> **The Interpreter:** Thank you.
>
> **The Court:** Thank you.

[*See* Doc. 63, p.3]. A review of the remainder of the transcript reflects that the interpreter was never utilized in this proceeding because the defendant had no difficulty speaking or understanding English.

With respect to that statement of facts, the court made the following inquiry:

> **The Court:** All right. Now, you have signed a statement of fact here, haven't you, a stipulation or statement of fact; those facts are the facts that the government relies upon to bring these charges against you?
>
> **Mr. Arbustos-Navarette:** Yes. Yes, I do.
>
> **The Court:** You have read that, haven't you?
>
> **Mr. Arbustos-Navarette:** Yes.

4

**The Court:**   And you and your lawyer have discussed it, haven't you?

**Mr. Arbustos-Navarette**:   Yes, sir.

**The Court:**   And you have signed it, haven't you?

**Mr. Arbustos-Navarette:**   Yes, sir.

**The Court:**   And in that statement of fact there are certain references made to amounts of drugs that you were involved with;  is that correct?

**Mr. Arbustos-Navarette:**   Yes.

**The Court:**   And you understand the amount of drugs involved can affect your sentence in this case;  you understand that?

**Mr. Arbustos-Navarette:**   Yes, Your Honor.

**The Court:**   Nevertheless you have agreed to it, haven't you?

**Mr. Arbustos-Navarette**: I can't hear you.

**The Court:**   You have agreed to it, though?

**Mr. Arbustos-Navarette:**   Yes.

**The Court:**   All right.  And you have signed it?

**Mr. Arbustos-Navarette:**   Yes, Your Honor.

**Your Honor**:   All right.  We will file it right now.

[*See id.*, pp.7-8].  The exchange then continued as follows:

5

>**The Court:** Has your lawyer told you and advised you as to the meaning and the reason for these charges being brought against you?
>
>**Mr. Arbustos-Navarette:** Yes, sir.
>
>**The Court:** And has he specifically advised you as to each and every element of these two offenses that you are charged with and which you have offered to plead guilty to, which the government must prove you guilty of beyond a reasonable doubt?
>
>**Mr. Arbustos-Navarette:** Yes, sir.
>
>**The Court:** And has your lawyer explained to you the meaning of any and all words in the offenses charged, such as the word "conspiracy"? Has he explained that concept to you?
>
>**Mr. Arbustos-Navarette:** To the best of his ability, yes, sir.
>
>**The Court:** And you think you understand that now?
>
>**Mr. Arbustos-Navarette:** Pretty much.
>
>**The Court:** Do you think he understands that, Counsel?
>
>**Mr. Moffatt:** Yes, Your Honor, I do.
>
>**The Court:** Okay. Good.

[*See id.*, pp.8-9]. The following exchange soon occurred:

>**The Court:** ... Are you pleading guilty here for any reason other than the fact that you are guilty? You wouldn't plead guilty for some other reason, would you, other than the fact that you are guilty? Do you understand?

6

>**Mr. Arbustos-Navarette:** Not really, Your Honor.
>
>**The Court:** All right. What I am trying to find out is if there is somebody that has told you to plead guilty and you are not guilty? I don't want you to plead guilty if you are not guilty.
>
>**Mr. Arbustos-Navarette:** Oh. I choose to take the responsibilities, Your Honor.
>
>**The Court:** You are pleading because you are guilty, aren't you?
>
>**Mr. Arbustos-Navarette:** Yes, sir.

[*See id.*, p.16]. Thereafter, the court concluded as follows:

> Accordingly, sir, I will accept your plea of guilty. I find you guilty of violating these two counts of this indictment, counts one and three.

[*See id.*, p.18]. The record also reflects that the court asked additional questions, the answers to which indicated that the defendant knowingly and voluntarily entered into his plea of guilty at that time.

On March 28, 2005, the government filed its notice of no objection to the presentence investigation report (PSR). [*See* Doc. 44]. On April 13, 2005, exactly two weeks before the sentencing date, defendant, through counsel, filed a motion for the court to review the attorney-client relationship in this case [*see* Doc. 49]. In particular, defense counsel represented the following:

7

. . .

> counsel would show that the client has requested the substitution of counsel due to the deterioration of the attorney-client relationship. Defendant has specifically informed counsel that he does not want counsel to represent him at the sentencing currently set for April 27, 2005. Counsel would note that he intended to file a sentencing memorandum in this case, and believes that such a filing would be in Defendant's best interests, but due to the current status of the attorney-client relationship and Defendant's express concerns, he is not filing such a memorandum at this time. Counsel would further note that the consideration of this motion may require a continuance of the date of sentencing in this case. [The Federal Defender Services of East Tennessee] would show that it is in the best interests of the Defendant and justice that the Court review the attorney-client relationship and that substitute counsel be appointed if the Court deems such substitution necessary.

[*See id.*]. Consequently, the court conducted a hearing on May 12, 2005, so that defense counsel and the defendant could each address his concern more specifically to the court [*see* Doc. 50]. At the conclusion of that hearing, the court determined that it would be in the best interests of the defendant to appoint another attorney for the defendant. After granting Mr. Moffatt permission to withdraw as counsel of record, the court entered an order that same day appointed Attorney Joseph A. Baker to represent the defendant for all further proceedings [*see* Doc. 51].

8

The court then set a sentencing hearing on August 16, 2005, which was later continued to September 28, 2005. However, the court was contacted on September 26, 2005, by Mr. Baker, who requested that the sentencing hearing be cancelled [*see* Doc. 54].[3] Among other things, Mr. Baker informed the court that he might have to file a motion to withdraw the guilty plea on behalf of his client [*see id.*].

For the next six weeks, no action was taken in this case because the court was expecting to receive a motion to withdraw the guilty plea. On November 15, 2005, the court entered an order resetting the sentencing hearing for February 9, 2006 [*see id.*]. In view of Mr. Baker's representation to the court, however, Mr. Baker was allowed up to and including December 9, 2005, to file a motion to withdraw defendant's guilty plea and to file a supporting brief with that motion. The pending motion was timely filed on December 9, 2005 [*see* Doc. 55].

In that motion and supporting memorandum, defendant, through his counsel, sets forth the following reasons:

> (1) Defense counsel's previous attorney, Jonathan A. Moffatt, was not fluid in Spanish, which is defendant's native language; consequently, defendant could not effectively communicate with previous counsel outside of the courtroom.

---

[3]In particular, Mr. Baker contacted Clifford A. Rodgers, law clerk to the undersigned, by telephone on that day to make that request.

(2) Defendant's guilty plea was not knowing or voluntary because he did not know the nature and the consequences of the charges against him.

(3) Defendant is innocent of cocaine conspiracy charge, "never having agreed, intended, or conspired to distribute or resale cocaine or any other controlled or illegal substance." [*See* Doc. 55, p.2]. Defendant also denies "being the leader of any criminal activity involving other participants." [*Id.*].

(4) Finally, defendant complains that communication has been stifled by the fact that there has been an interruption in his legal representation because Mr. Moffatt had to withdraw from representing him and Mr. Baker was subsequently appointed to represent him.

II.

"'It is well settled that the withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.'" *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987) (quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978) (per curiam)). In order to withdraw a guilty plea before sentencing, a defendant must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The purpose of Rule 11(d) "is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes

10

made a bad choice in pleading guilty." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (internal citation and quotation marks omitted).

In determining whether a defendant has demonstrated a "fair and just reason" to set aside a plea of guilty in this circuit, the trial courts have been directed to consider the following factors: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceeding; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995). In this case, none of the above mentioned factors supports defendant's motion to withdraw his guilty plea.

With respect to the first factor, the amount of time that elapsed between the plea and the motion to withdraw it, the record reflects, as previously noted, that the defendant pled guilty on January 26, 2005, and that his written motion to withdraw his plea was filed on December 9, 2005, approximately 10½ months later. Even if the court takes into account the fact that defendant's second appointed

11

attorney, Mr. Baker, telephoned the undersigned's chambers on September 26, 2005, indicating that he might have to file a motion to withdraw the guilty plea, that telephone conversation did not occur until exactly eight months after the entry of the defendant's guilty plea. The Sixth Circuit has upheld the denial of motions to withdraw based on considerably less delay. *See, e.g., United States v. Valdez*, 362 F.3d 903, 919 (6th Cir. 2004) ("First, [defendant's] unjustified 75-day delay alone supported the court's denial of a motion to withdraw." (citation omitted)); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (calling a 77-day delay the "strongest factor" supporting the district court's denial of defendant's motion); *United States v. Baez*, 87 F.3d 805, 807 (6th Cir. 1996) (calling a 67-day delay the "strongest factor" supporting the district court's denial of defendant's motion); and *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (terming a 55-day gap a "lengthy delay"). Likewise, in this case, this unusually long length of time does not indicate that the defendant, upon entering a plea of guilty, immediately recognized that he did so hastily and "with unsure heart and confused mind ... ." *See Bazzi*, 94 F.3d at 1027. To the contrary, this delay indicates nothing more than a tactical decision by this defendant.

Furthermore, regarding the second factor, this defendant offers no reason, valid or otherwise, for failing to move for withdrawal earlier in the proceedings. Even if the court generously counts his attorney's telephone call to

12

chambers as the appropriate line of demarcation, there is simply no explanation as to why the defendant waited a minimum of eight months before recognizing the necessity of withdrawing his guilty plea.

The third factor, and indeed a key factor, is whether the defendant has asserted or maintained his innocence. Here, the defendant, through counsel, states that he "maintains his innocence of the cocaine conspiracy charge, never having agreed, intended, or conspired to distribute or resell cocaine or any other controlled or illegal substance [and that] [h]e further denies being the leader of any criminal activity involving other participants." [*See* Doc. 55, p.2]. However, it must be emphasized that the defendant has not filed an affidavit proclaiming his innocence.[4] The court has also carefully reviewed the transcript of the proceedings on January 26, 2005. That review indicates that the defendant unequivocally pled guilty to counts one and three of the indictment because he was, in fact, guilty [*see* Doc. 63, p.16].

Additionally, this record contains evidence and information which is not normally present when the court must adjudicate a motion to withdraw a guilty plea.

---

[4]That is not to suggest, however, that the filing of such an affidavit would in and of itself sway the court's opinion on this particular issue; rather, this omission is noted simply to underscore the fact that the only sworn testimony in this record regarding the defendant's guilt or innocence is one of guilt during the change of plea colloquy.

13

Here, the government has filed four FBI Form 302s which indicate that after the defendant's arrest and detention in July 2004, and before the entry of his guilty plea in January 2005, the defendant, accompanied by counsel and in the presence of either a certified translator, Patricia Robledo, or FBI Task Force Agent Robert Suarez, whose native language is Spanish, repeatedly admitted and described his participation in the drug trafficking conspiracy with his co-conspirators and others in at least four debriefings [*see* Doc. 62-2, pp.1-4]. Consequently, this record reflects that the defendant has consistently maintained his guilt in the drug conspiracy at issue - not the other way around. The third factor, therefore, cuts heavily in favor of the government.

The circumstances underlying the entry of the guilty plea comprise the next factor which the court must consider. Again, the court has carefully reviewed the transcript of the proceedings on January 26, 2005, and that review indicates that the defendant's plea was entered voluntarily, knowingly, and intelligently. There is very little hesitation whatsoever by the defendant in any answer to the inquiries made by the court. To the extent that there was hesitation or some confusion, those matters were quickly cleared up by the court. This court is also not impressed with the defendant's argument that the entry of the guilty plea without the use of a court-certified interpreter resulted in "grave communication errors and likely influenced his decision to plead guilty." [*See* Doc. 56, p.2]. Had this court been concerned in the

14

least about a communication problem, the court would have promptly utilized the services of the interpreter who was on a standby status.  There is simply nothing in this transcript to suggest to the court that the defendant made an improvident or rushed decision.  In fact, the record reflects that this case was reset on at least a couple of occasions [*see* Docs. 25 and 27] in order to allow the defendant and his counsel adequate time to prepare for the trial and to engage in plea negotiations.  Therefore, this factor too cuts in favor of the government.

The next two factors for the court's consideration - the defendant's nature and background and the degree to which the defendant has had prior experience with the criminal justice system - will be analyzed together.  Here, the defendant's background indicates that he is no neophyte to the legal system.  When the court inquired regarding the number of previous felonies, the defendant responded, "[a] whole bunch ... .  I lose count and too many different names and all that.  So there's too many ... ."  [*See* Doc. 63, p.13].  Defendant's attorney then clarified that he was aware his client had been convicted of three felonies, two of which were drug related and the third being an aggravated assault.  [*See id.*].  Moreover, the fact that the defendant is now represented by his second attorney in this case - at his insistence - indicates that he is an experienced criminal defendant.  Accordingly, these two factors also weigh in favor of the government.

15

The final factor for the court's consideration is the potential prejudice to the government if the motion to withdraw is granted. However, given that none of the other six factors weighs in favor of defendant's entitlement to plea withdrawal, the court need not address this factor. *See United States v. Triplett*, 828 F.2d 1195, 1198 (6th Cir. 1987) (holding that prejudice to the government need only be established if the defendant has articulated a fair and just reason for withdrawing a guilty plea).

### III.

The court concludes that the defendant has failed to articulate a fair or just reason in support of his motion to withdraw his plea of guilty. The defendant has not even come close. The court is confident that the defendant knew precisely what he was doing at the time he entered his plea and that to allow the defendant to withdraw his plea of guilty under the facts and circumstances of this case would, in effect, allow this defendant to convert his guilty plea and then the withdrawal of that plea "into something akin to a move in a game of chess," which is not to be tolerated by a district court. *See United States v. Hyde*, 520 U.S. 670, 677 (1997). The court is convinced that the present motion to withdraw his guilty plea is nothing more than a tactical move by the defendant which must be soundly rejected.

Accordingly, defendant's motion to withdraw guilty plea [Doc. 55] is hereby DENIED, whereby the defendant will be sentenced - as presently set - on **February 9, 2006, at 11:00 a.m.** The Clerk is once again DIRECTED to employ the services of a Spanish-speaking interpreter for that proceeding, although he or she may again be placed on a "stand-by" status.

**E N T E R :**

*s/  James H. Jarvis*
UNITED STATES DISTRICT JUDGE
